Filed 9/11/23  In re C.C. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| IN RE C.C., et al., | 2d Juv. No. B325453 |
| | (Cons. w/ B326879) |
| Persons Coming Under The Juvenile Court Law. | (Super. Ct. Nos. 21JV00408, 21JV00409) |
| _____ | (Santa Barbara County) |
| | |
| SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES, | |
| | |
| Plaintiff and Respondent, | |
| | |
| v. | |
| | |
| A.C., et al., Defendants and Appellants. | |

A.C. (father) and M.C. (mother) appeal the juvenile court's order terminating their parental rights to their minor child C.C.

with a permanent plan of adoption. (Welf. & Inst. Code,[1] § 366.26.)[2] Father and mother's sole contention is that Santa Barbara County Child Welfare Services (CWS) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA; 25 U.S.C.S. § 1901 et seq.) and related California law (Welf. & Inst. Code, § 224.2).[3] We affirm.

## FACTS AND PROCEDURAL HISTORY

Father and mother are the natural parents of C.C., born in February 2019. On December 8, 2021, CWS took C.C. into custody under a protective custody warrant. On December 30, 2021, C.C. was ordered detained pursuant to a section 300 petition alleging among other things that both parents had mental health issues that prevented them from properly caring for C.C. The detention report stated that when a social worker had asked father about C.C.'s potential Indian heritage, father replied that two of his grandparents were "one hundred percent Native." At the detention hearing, mother stated that she had no Indian ancestry. The maternal grandmother confirmed the mother's statements. Father told the court there was "a

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] The juvenile court also terminated parental rights to mother's minor child P.A. Although mother's notice of appeal refers to both C.C. and P.A., her brief merely joins in the arguments raised in father's briefs regarding the termination of rights as to C.C.

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

possibility" that C.C. was a member or eligible for membership in a Pueblo Indian tribe because "my great, great grandfather, they were full blown Pueblo.  My grandfather's father was Pueblo." Father also offered "I remember they were telling me it was like Kansas, in that area."  The court replied "you have indicated Pueblo, so the Department will have to follow through on that on and see what additional information can be obtained."

On January 18, 2022, the social worker asked father to provide any additional information he had regarding C.C.'s potential Indian heritage.  Father replied that "his grandfather, [C.B.], is a quarter Pueblo Indian" and that "his great grandparents were full Pueblo Indian but he did not know their names."  Father acknowledged, however, that "this information had not been verified."

In a February 3, 2022 addendum to the jurisdiction and disposition report, the social worker reported that during a January 18 telephone conversation he had asked father to provide any additional information he had about C.C.'s paternal relatives.  Father told the social worker "that he has chosen not to maintain connections with his relatives and did not want to provide information."  After the social worker explained "the importance of maintaining family connections for [C.C.]," father replied that he wanted to speak with "a close friend" of his before agreeing to provide any contact information for his relatives. Father then "arranged to text [the social worker] contact information for relatives and close friends."  Father never texted the social worker any such information and further attempts to contact him were unsuccessful.

CWS also reported that on January 18, 2022, the social worker conducted an internet search for father's relatives and found names and addresses for nine relatives.  Those relatives

3

included the paternal grandfather A.C., Jr.; the paternal grandmother D.C.; and the paternal great-grandfather A.C.  CWS mailed general inquiry letters to all nine individuals but none of them responded.

On February 10, 2022, the juvenile court sustained the section 300 petition and granted both parents reunification services and supervised visitation.  At the conclusion of the six-month review hearing, services were terminated for both parents and the matter was set for a section 366.26 permanency planning hearing.

In its section 366.26 report, CWS urged the court to find that ICWA did not apply.  CWS documented the extensive efforts it had made to inquire into C.C.'s potential Pueblo ancestry.  CWS attached return receipts indicating that in August 2022 an "ICWA inquiry with family tree" had been sent to 18 separate Indian tribes, including all Pueblo tribes as well as multiple additional tribes of which CWS became aware while investigating tribes in Kansas.  Seventeen tribes sent responses indicating that C.C. was neither a member nor eligible for membership; the remaining tribe did not respond.  On October 7, 2022, CWS mailed an ICWA inquiry with family tree to two additional tribes.

CWS also documented the multiple phone calls it had made to tribes and agencies in its efforts to locate Pueblo tribes in Kansas, and noted that father had refused to provide any contact information for his relatives.  When the social worker was finally able to make contact with father on November 29, he provided the names and birthdates of paternal grandfather A.C., the paternal grandmother D.C., and the paternal great-grandfather C.B.

At the conclusion of the section 366.26 hearing, the court terminated parental rights with a permanent plan of adoption

4

and found that ICWA did not apply.  After counsel for CWS pointed out that neither parent had submitted the ICWA-0202 form, both forms were completed and filed with the court.

## DISCUSSION

Father and mother contend the order terminating their parental rights must be reversed and the matter remanded to the juvenile court because the court failed to comply with the inquiry requirements of ICWA and section 224.2.  We are not persuaded.

We generally review ICWA findings for substantial evidence.  (*In re J.K.* (2022) 83 Cal.App.5th 498, 504.).  "Because the material facts at issue are undisputed, "we review independently whether ICWA requirements have been satisfied.""  (*Ibid.*)

ICWA defines an "'Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C.S. § 1903(4) & (8); § 224.1, subd. (a).)  The juvenile court and county welfare department have an affirmative and continuing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child.  (§ 224.2, subd. (a); Cal. Rules of Court, rules 5.481(a) & 5.668(c).)

"'The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.""'  (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)  The duty to inquire begins with the initial contact and obligates the juvenile court and the child services agency to ask the child, parents, extended family members, and others who have an interest in the child, whether the child is, or may be, an Indian child.  (§ 224.2, subds. (a)-(c).)

5

The duty of further inquiry is triggered if the child services agency or the juvenile court has "reason to believe that an Indian child is involved in a proceeding." (§ 224.2, subd. (e).) The Legislature defined "reason to believe" as having "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) When the "reason to believe" threshold is reached, the requisite further inquiry includes interviewing the parents and extended family members, contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services (SDSS) for assistance in identifying the tribes in which the child may be a member or eligible for membership, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility. (§ 224.2, subd. (e)(2)(A)-(C).)

CWS contends it had no duty to conduct an initial inquiry of extended family members regarding C.C.'s potential Indian heritage because the child was detained under a protective custody warrant pursuant to section 340, and section 224.2, subdivision (b) only applies when a child is taken into temporary custody pursuant to section 306. (See *In re Robert F.* (2023) 90 Cal.App.5th 492, 497, 500, 504 (*Robert F.*); see also *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677-681 (*Ja.O.*) We need not decide whether we agree with *Robert F.* and *Ja.O.* because even if there was no duty of initial inquiry, father's assertion of Pueblo heritage gave rise to a reason to believe the child may be an Indian child and thus triggered the duty to conduct a further inquiry. (§ 224.2, subd. (e)(2)(A)-(C).)[4]

---

[4] We also note that the juvenile court in this case did not purport to issue a protective custody order pursuant to section

6

We conclude, however, that the further inquiry requirements of section 224.2, subdivision (e) were satisfied here. In arguing to the contrary, father and mother claim that CWS was required to locate C.C.'s paternal great-great-grandfather C.B., the individual through whom he claimed C.C. had Pueblo heritage. They also complain that CWS should have made ICWA inquiries of the nine paternal relatives it identified in an online database.

Father, however, refused to provide contact information regarding his relatives. "Where . . . a parent largely fails . . . to provide names and contact information for extended family members, [CWS's] ability to conduct an exhaustive ICWA inquiry necessarily is constrained." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082, interpreting § 224.2, subd. (b).) "[W]e cannot ask [CWS] to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*Ibid.*)

CWS sent general inquiry letters to the nine paternal relatives it had identified, which included the paternal grandfather A.C., Jr., the paternal grandmother D.C., and the paternal great-grandfather A.C. None of those relatives, however, responded to CWS's inquiry. Moreover, father told the social worker he would not provide any contact information for

340. Rather, the order was issued "pursuant to Welfare and Institutions Code § 306 and/or § 309." The social worker applied for a protective custody warrant under both sections 306 and 340, but the court's order makes clear that the warrant was not issued pursuant to section 340. The order is prepared on a form that contains a section for warrants issued pursuant to sections 306 and 309, and another for warrants issued pursuant to section 340. The box corresponding to sections 306 and 309 is checked, while the box corresponding to section 340 is left blank.

7

his relatives and further attempts to obtain such information from him were unsuccessful. Under the circumstances, the juvenile court did not err in finding that CWS had made reasonable efforts to contact and make inquiries of C.C.'s paternal relatives regarding the child's possible Indian heritage.

We also reject father and mother's contention that CWS failed to provide the identified tribes with all available information to determine whether C.C. might be a member or eligible for membership. The record demonstrates that CWS made extensive efforts to investigate C.C.'s potential Pueblo heritage and sent an "ICWA inquiry with family tree" to 20 separate Indian tribes, including all Pueblo tribes. Although father and mother note that the family tree is not included in the record on appeal, it is reasonable to infer that the family tree included all of the information CWS had regarding C.C.'s paternal relatives, which included the paternal grandfather A.C., Jr., the paternal great-grandparents A.C. and D.C., and the paternal great-great-grandfather C.B. The social worker also made multiple phone calls to the tribes and agencies in its efforts to locate Pueblo tribes in Kansas, and noted that father had refused to provide any contact information for his relatives.

Although father and mother also note that father belatedly provided the names and birthdates of C.C.'s paternal great-grandparents A.C. and D.C. and the paternal great-great-grandfather C.B, the names of these individuals were already known to CWS and were thus presumably included in the family tree that was sent to the tribes. Moreover, none of the tribes subsequently informed CWS that they had been given insufficient information to determine whether C.C. was a member of the tribe or eligible for membership, nor did they assert that their conclusions might be different if additional

8

information about C.C.'s paternal relatives had been provided. There is thus no basis for us to conclude that CWS failed to satisfy its duty of further inquiry under section 224.2, subdivision (e).

Finally, we reject father and mother's claim that the juvenile court erred in failing to ensure that both parents completed and filed the ICWA-020 form either at the initial hearing in the matter or when they first appeared in court. Although the forms were not filed until the section 366.36 hearing, father and mother fail to demonstrate they suffered any prejudice as a result of the delay. Father's ICWA-020 form identified New Mexico rather than Kansas as location of C.C.'s potential Pueblo heritage, but CWS sent the ICWA inquiry and family tree to the Pueblo tribes in both states. Accordingly, any error arising from the delayed filing of the ICWA-020 is harmless.

## DISPOSITION

The judgment (order terminating parental rights) is affirmed.

<u>NOT TO BE PUBLISHED.</u>


CODY, J.

We concur:


YEGAN, Acting P.J.          BALTODANO, J.

9

Gustavo Lavayen, Judge
Superior Court County of Santa Barbara

_____

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant A.C.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant M.C.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Senior Deputy Counsel, for Plaintiff and Respondent.